E-FILED
Thursday, 02 March 2006 10:12:06 AM
Clerk, U.S. District Court, ILCD

NO. 4-96-0297

IN THE

APPELLATE COURT OF ILLINOIS

FOURTH JUDICIAL DISTRICT



FILED

NOV 2 0 1996

CLERK OF THE
APPELLATE COURT, 4th DIST.

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | the Seventh Judicial Circuit |
| Plaintiff-Appellee, | ) | Sangamon County, Illinois |
| | ) | |
| vs. | ) | No. 95-CF-573 |
| | ) | |
| THOMAS A. RICE, | ) | Honorable |
| | ) | Thomas R. Appleton |
| Defendant-Appellant. | ) | Judge Presiding. |

<u>BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE</u>

Patrick W. Kelley
State's Attorney
Sangamon County Complex
Springfield, Illinois  62701

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
David E. Mannchen
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE

<u>ORAL ARGUMENT REQUESTED</u>

EXHIBIT I

<u>POINTS AND AUTHORITIES</u>                    <u>PAGE</u>

I

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN
ALLOWING THE FORMER TESTIMONY OF AN UNAVAILABLE
WITNESS TO BE READ TO THE JURY........................    2

<u>People</u> v. <u>Smith</u>, 275 Ill.App.3d 207, 211 Ill.Dec.
    746, 655 N.E.2d 1129 (1st Dist. 1995)............    3, 4,
                                                          6

<u>People</u> v. <u>Carr</u>, 168 Ill.App.3d 669, 119 Ill.Dec.
    785, 523 N.E.2d 393 (1st Dist. 1987)..............    3, 6

<u>People</u> v. <u>Radovick</u>, 275 Ill.App.3d 809, 212
    Ill.Dec. 82, 656 N.E.2d 235 (1st Dist. 1995)......    3

<u>People</u> v. <u>Illgen</u>, 145 Ill.2d 353, 164 Ill.Dec.
    599, 583 N.E.2d 515 (1991).........................    3

<u>People</u> v. <u>Niebes</u>, 69 Ill.App.3d 381, 25 Ill.Dec.
    924, 387 N.E.2d 800 (1st Dist. 1979)..............    3, 6

<u>Ohio</u> v. <u>Roberts</u>, 448 U.S. 56, 100 S.Ct. 2531,
    65 L.Ed.2d 97 (1980)..............................    4

<u>People</u> v. <u>Payne</u>, 30 Ill.App.3d 624, 332 N.E.2d
    745 (1st Dist. 1975)..............................    6, 7

<u>People</u> v. <u>Chism</u>, 65 Ill.App.3d 33, 22 Ill.Dec.
    57, 382 N.E.2d 377 (1st Dist. 1978)...............    9

II

THE DEFENDANT WAS PROVEN GUILTY OF MURDER BEYOND A

REASONABLE DOUBT....................................    11

People v. Enis, 163 Ill.2d 367, 206 Ill.Dec.

    604, 645 N.E.2d 856 (1994)......................    11, 13

People v. Bailey, 265 Ill.App.3d 262, 202 Ill.Dec.

    546, 638 N.E.2d 192 (1st Dist. 1994)............    12

People v. Bryant, 241 Ill.App.3d 1007, 182 Ill.Dec.

    376, 609 N.E.2d 910 (1st Dist. 1993)............    12

People v. Edwards, 218 Ill.App.3d 184, 160 Ill.Dec.

    679, 577 N.E.2d 1250 (1st Dist. 1991)...........    13

People v. Cook, 129 Ill.App.3d 531, 84 Ill.Dec.

    719, 472 N.E.2d 856 (1st Dist. 1984)............    13

III

THE NEW "TRUTH IN SENTENCING" STATUTE IS CONSTITUTIONAL.    14

People v. Lee, 167 Ill.2d 140, 212 Ill.Dec. 231,

    656 N.E.2d 1065 (1995)..........................    15

People v. Jeffries, 164 Ill.2d 104, 207 Ill.Dec.

    21, 646 N.E.2d 587 (1995).......................    15

People v. Williams, 161 Ill.2d 1, 204 Ill.Dec.

    72, 641 N.E.2d 296 (1994).......................    15

U.S. v. Wilkins, 911 F.2d 337 (9th Cir. 1990).........    15

U.S. v. Jacobs, 877 F.2d 460 (4th Cir. 1989)..........    15

U.S. v. Franks, 864 F.2d 992 (3rd Cir. 1988)..........    15

Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954,

    57 L.Ed.2d 973 (1978) ..............................    15

People v. Gaither, 221 Ill.App.3d 629, 164 Ill.Dec.

    172, 582 N.E.2d 735 (5th Dist. 1991) ..............    16

People v. Arna, 168 Ill.2d 107, 212 Ill.Dec.

    963, 658 N.E.2d 445 (1995) ........................    17

People v. Dunigan, 165 Ill.2d 235, 209 Ill.Dec.

    53, 650 N.E.2d 1026 (1995) ........................    17

People v. Taylor, 102 Ill.2d 201, 80 Ill.Dec.

    76, 464 N.E.2d 1059 (1984) ........................    17

People v. Patterson, 154 Ill.2d 414, 182 Ill.Dec.

    592, 610 N.E.2d 16 (1992) .........................    18

People v. Wisslead, 108 Ill.2d 389, 92 Ill.Dec.

    226, 484 N.E.2d 1081 (1985) .......................    18

730 ILCS 5/3-6-3(a)(2) (West 1996) .....................    14

730 ILCS 5/3-6-3(a)(2)(i) (West 1996) ..................    15

730 ILCS 5/3-3-6-3(a)(2.1) (West 1996) .................    16

720 ILCS 5/9-1(b), (g) (West 1994) .....................    16

730 ILCS 5/5-5-3 (West 1994) ...........................    16

730 ILCS 5/5-8-1(a)(1) (West 1994) .....................    16

730 ILCS 5/3-6-3.1(a) (West 1996) ......................    17

Supreme Court Rule 341 .................................    18

## NATURE OF THE CASE

Following a jury trial, the defendant was convicted of murder and was sentenced to 35 years' imprisonment.   On appeal, the defendant contends that: (1) the court erred in admitting the prior testimony of an absent witness to be read to the jury; (2) the court erred in denying his motion for a directed verdict; and (3) the new "truth in sentencing" provisions are unconstitutional.

1

ARGUMENT

I

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING THE FORMER TESTIMONY OF AN UNAVAILABLE WITNESS TO BE READ TO THE JURY.

The defendant contends that he was deprived of a fair trial when the transcript of the testimony given by Larry Granderson at the initial trial was read to the jury. The defendant contends that the State had not exercised sufficient diligence to obtain Mr. Granderson's presence to allow his former testimony to be used. The defendant further contends that his opportunity to cross-examine Mr. Granderson was inadequate since there were several questions which could have been asked during the second trial which had not been raised during the first trial, particularly questions regarding the apparent inconsistencies between his testimony and the testimony of witnesses who had not testified at the first trial.

The People maintain that the trial court did not abuse its discretion in allowing the State to use the transcript of Mr. Granderson's trial testimony when he was not available at the time of retrial. The People further maintain that the defendant's opportunity to cross-examine Mr. Granderson was

2

sufficient to safeguard his confrontation rights in the second trial.

It is well established that the former testimony of a witness who is unavailable may be admitted into a subsequent trial without violating the defendant's right to confrontation where the State has made a reasonable, good faith effort to obtain his presence at trial and the defendant had an adequate opportunity to cross-examine the witness at the former proceeding. People v. Smith, 275 Ill.App.3d 207, 211 Ill.Dec. 746, 655 N.E.2d 1129, 1135-1136 (1st Dist. 1995); People v. Carr, 168 Ill.App.3d 669, 119 Ill.Dec. 785, 523 N.E.2d 393, 397 (1st Dist. 1987). The standard of review regarding the admissibility of the former testimony is whether the trial court abused its discretion. People v. Radovick, 275 Ill.App.3d 809, 212 Ill.Dec. 82, 656 N.E.2d 235, 241 (1st Dist. 1995). An abuse of discretion may be found only where the court's decision is arbitrary, fanciful, or no reasonable man would take the view adopted by the court. See, People v. Illgen, 145 Ill.2d 353, 164 Ill.Dec. 599, 583 N.E.2d 515 (1991). There is no such abuse of discretion here.

The question of whether good faith and reasonable diligence has been exercised is determined on a case-by-case basis. The State must show that the steps it took were made in good faith and were reasonable under the circumstances. Smith, 655 N.E.2d at 1135-1136; People v. Niebes, 69 Ill.App.3d 381, 25 Ill.Dec. 924, 387 N.E.2d 800, 805 (1st

3

Dist. 1979). The lengths to which the prosecution must go is a question of reasonableness and does not include futile acts. Ohio v. Roberts, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 97 (1980); Smith, 655 N.E.2d at 1135. The fact that hindsight may indicate other avenues of inquiry is insufficient to establish lack of diligence. See, Roberts 448 U.S. at 76, 100 S.Ct. at 2544. Under this standard, an adequate showing of diligence to obtain the presence of Mr. Granderson was established.

The evidence established that Mr. Granderson was a witness who had been assisting the police and who had never indicated that he was not going to testify. (R. Vol. VI, 48) Mr. Granderson was subpoenaed (R. Vol. VI, 31, 51) and knew that the trial was set for January 22, 1996 (R. Vol. VI, 35-36, 52-53). Following the mistrial, Detective Robert Oney maintained semi-regular contact with Mr. Granderson and spoke with him about how things were going. (R. Vol. VI, 30) Detective Oney lost contact with Mr. Granderson around the first of the year and had last seen him at a reenactment of the offense on November 27, 1995. (R. Vol. VI, 30, 32, 42) Mr. Granderson never gave any indication that he would be leaving town. (R. Vol. VI, 31)

When Detective Oney lost contact with Mr. Granderson, he contacted his girl friend, Rose Strickland, who gave him the phone number of a drug and alcohol rehab center in Quincy where Mr. Granderson could be contacted. (R. Vol. VI, 32)

Detective Oney also checked out Mr. Granderson's sister and an address on Brandon Avenue in Springfield. (R. Vol. VI, 34) Detective Oney called the number given to him by Ms. Strickland and was able to speak with Mr. Granderson on the evening of January 18, 1996. (R. Vol. VI, 34-35) He arranged a meeting in Quincy with Mr. Granderson for noon on January 18, but Mr. Granderson had left the center and did not appear for the scheduled meeting. (R. Vol. VI, 35-36) Detective Oney then went to a number of locations where Steve Swink, the center director, indicated that Mr. Granderson might be located without any success. (R. Vol. VI, 36-37)

Detective Oney returned to Springfield and again called the center at about 4:00 p.m. on January 18, 1996. He spoke to Mr. Granderson who promised to come to Springfield on January 19. (R. Vol. VI, 37-38) Mr. Granderson also stated that he was going to be in court to testify. (R. Vol. VI, 52) Detective Oney has not heard from Mr. Granderson since this conversation. (R. Vol. VI, 38) Following that call, Detective Oney alerted the police in Springfield and Quincy to be on the lookout for Mr. Granderson and attempted to have a body attachment served at his last known address in Quincy. (R. Vol. VI, 38-39, 47) Mr. Granderson had left that residence around 9:00 p.m. on January 18, and the neighbors had no idea where he went. (R. Vol. VI, 39-40). Detective Oney contacted Ms. Strickland following January 18, but she had not heard from him or seen him. (R. Vol. VI, 40)

Detective Oney testified that the search for Mr. Granderson had been coordinated by the state's attorney's office. (R. Vol. VI, 40)  Tom Sklenka, an investigator for the state's attorney, had assisted in the search by going to the address they had for Mr. Granderson and to the area where Mr. Granderson's sister resides.  (R. Vol. VI, 40-41)

The trial court did not abuse its discretion in determining that these efforts were a reasonable, diligent attempt to procure the presence of Mr. Granderson.  The state's attorney was dealing with a witness who had been subpoenaed and had given no indication that he would not testify at the defendant's trial.  The state's attorney, through the efforts of Detective Oney, in fact contacted Mr. Granderson who confirmed his knowledge of the trial date and his intention to be there.  Within this context, the efforts to contact Mr. Granderson at the rehabilitative center, his sister's house, the house of his girlfriend, his last known address in Springfield, the attempt to serve a body attachment at his last known address in Quincy, and the lookout issued to the Springfield Police Department were reasonable.  See, Smith, 655 N.E.2d at 1132; Carr, 523 N.E.2d at 397; Niebes, 387 N.E.2d at 805-806.  The defendant's suggestions of questions or inquiries that could possibly have been made are insufficient to disturb the trial court's finding.

This case is clearly distinguishable from People v. Payne, 30 Ill.App.3d 624, 332 N.E.2d 745 (1st Dist. 1975),

6

relied upon by defendant.   In <u>Payne</u>, the missing witness was one who had been difficult to locate for the first trial but no subpoena was issued to him for the second trial.    In addition, in <u>Payne</u>, there was absolutely no coordination between the police and the state's attorney's office in order to try to locate the witness and the officer conducting the search did so on his own without contacting the state's attorney and without learning what information that office had.   Finally, when a subpoena was finally issued, the address given on the subpoena was for a different address than that testified to by the absent witness.   This case is clearly distinguishable since there was cooperation and coordination between the police and the state's attorney, since Mr. Granderson had been subpoenaed, and since the authorities had no reason to believe that Mr. Granderson would be difficult to locate or would fail to appear to testify as he had promised. Defendant's conviction therefore need not be reversed based on <u>Payne</u>.

Nor must defendant's conviction be reversed on the theory that he did not have an adequate opportunity to cross-examine Mr. Granderson at the initial trial.   The defendant does not contend that any limitation had been placed on his ability to cross-examine the witness during the first trial.   Nor could any such contention be made in light of the transcript of that trial which indicates that the defendant was fully able to cross-examine Mr. Granderson about his ability to observe the

7

offense, any bias or interest he might have because of his relationship with the victim, his previous convictions, the position in which the victim was standing when shot, and whether he had discussed this incident with his son, Randy Raglin (who had also testified regarding the homicide).

The defendant's only contention is that his cross-examination was inadequate because there are now some questions which he would like to ask at the second trial to point out inconsistencies between his former testimony and the testimony of the witnesses who testified for the first time at the second trial. The defendant also complains about the inability to question Mr. Granderson about any drug or alcohol problems at the first trial. However, as the trial court indicated, the state's attorney was laboring under the same disability and was not able to examine Mr. Granderson about anything that the new witnesses may have added to the case. (R. Vol. VI, 28) In addition, any inconsistencies between Mr. Granderson's testimony that he watched the shooting through the front door (R. Vol. VI, 78-81, 96-98, 100-102) and that Ms. Strickland ran out the door past him following the shooting (R. Vol. VI, 82, 102) and the testimony of Ms. Strickland that she ran out the door unobstructed and could not remember where Mr. Granderson was standing (R. Vol. V, 120-121, 134-135) would tend to benefit the defendant. The alleged inconsistencies would thus only go to the weight of Mr. Granderson's prior testimony and would not provide a basis

8

for exclusion.   See, <u>People v. Chism</u>, 65 Ill.App.3d 33, 22 Ill.Dec. 57, 382 N.E.2d 377, 382 (1st Dist. 1978).

It should here be noted that, whether or not there are any additional witnesses at the second trial, the evidence presented at a second trial will never be identical to that presented at the first and there will always be supplemental questions that an attorney might wish to ask.  Accepting the defendant's argument that the desire to ask additional questions bars the admission of the recorded testimony of an absent witness would have the effect of totally eliminating the rule allowing the use of the former testimony.  No such rule should be adopted.

Finally, any error in the admission of Mr. Granderson's testimony should be deemed harmless error.   The evidence of defendant's guilt of murder was overwhelming.   Without considering  Mr.  Granderson's  testimony,  the  undisputed evidence indicated that the defendant was in the car from which the fatal shot was fired, had come to this location looking for John Day, and had a motive to kill Mr. Day.  The undisputed evidence also established that the gun was pulled back into the car following the shooting by the front seat passenger, the location where defendant was sitting in the car.  (See Argument II) Even without Mr. Granderson's testimony, the jury could not have reached a contrary verdict and any impropriety in the admission of Mr. Granderson's testimony should be deemed harmless.

9

This court should therefore affirm the defendant's conviction.

10

ARGUMENT

II

THE DEFENDANT WAS PROVEN GUILTY OF MURDER BEYOND A REASONABLE
DOUBT.

The defendant contends that he was not proven guilty of
murder beyond a reasonable doubt because the evidence for the
State was contradictory regarding where witnesses were located
and how the victim was standing when shot.  The defendant
further contends that the testimony of the witnesses that they
had seen a gun withdrawn into the front passenger seat of the
car could not be believed because of their poor opportunity to
observe.  The People maintain that sufficient evidence was
presented from which the jury could find the defendant guilty
of murder beyond a reasonable doubt.

It is well established that it is not the function of the
reviewing court to reweigh the evidence or to determine anew
the defendant's guilt.  Instead, the reviewing court's role is
limited to a determination whether, taking all the evidence in
the light most favorable to the State, any rational trier of
fact could have found the essential elements of the offense
proven beyond a reasonable doubt.  People v. Enis, 163 Ill.2d
367, 206 Ill.Dec. 604, 645 N.E.2d 856, 871 (1994); People v.

11

<u>Bailey</u>, 265 Ill.App.3d 262, 202 Ill.Dec. 546, 638 N.E.2d 192, 198 (1st Dist. 1994). The determination of the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence are for the jury whose determination is entitled to deference. The reviewing court is not free to substitute its judgment for that of the jury on these issues. <u>People v. Bryant</u>, 241 Ill.App.3d 1007, 182 Ill.Dec. 376, 609 N.E.2d 910, 917 (1st Dist. 1993); <u>Bailey</u>, 638 N.E.2d at 198. The evidence presented here was sufficient to meet this standard.

The evidence indicated that the defendant was the front seat passenger in a car which came to the residence of Rosia Strickland and Larry Granderson on the afternoon of August 29, 1995. The defendant asked to speak with John Day. (R. Vol. IV, 46-47; Vol. V, 66-67, 114, 142, 143-145, 161; Vol. VI, 72-75) The car in question was identified as belonging to the defendant. (R. Vol. V, 146) Mr. Day went out to the car to speak with the defendant and was shot while standing next to the car. (R. Vol. IV, 43-44, 46-47, 52-53; Vol. VI, 78-81, 96-98, 100-102) A gun was withdrawn into the front passenger seat of the car as it fled the scene immediately after the shot was fired. (R. Vol. IV, 52-53, 63-64, 67, 76-77) Antonio Coleman had told the grand jury (R. Vol. V, 69-70) and the police (R. Vol. V, 71) that he had seen the man in the front passenger seat pull out the gun and point it out of the car. Larry Granderson testified that he saw the defendant

12

shoot Mr. Day. (R. Vol. VI, 78-81, 96-98, 100-102)  Finally, the evidence indicated that the defendant had a strong motive to kill Mr. Day who had been spending time with the defendant's girlfriend and who had beaten the defendant up the morning before the shooting.  (R. Vol. IV, 105-107, 109-110, 114-116; Vol. V, 24-25, 37-39; Vol. VI, 149-153, 155-166)

Based on this evidence, a reasonable jury could conclude beyond a reasonable doubt that the defendant was guilty of murder. See, <u>Enis</u>, 645 N.E.2d at 871; <u>People v. Edwards</u>, 218 Ill.App.3d 184, 160 Ill.Dec. 679, 577 N.E.2d 1250, 1258 (1st Dist. 1991); <u>People v. Cook</u>, 129 Ill.App.3d 531, 84 Ill.Dec. 719, 472 N.E.2d 856, 859 (1st Dist. 1984).  Any inconsistencies in the testimony of the witnesses as to where they were standing, Mr. Day's position when shot, or the ability to see the offense were all matters concerning the weight and credibility of the evidence.  The jury's determination of these issues may not be disturbed by this court.

This court should therefore affirm the defendant's conviction.

13

ARGUMENT

III

THE NEW "TRUTH IN SENTENCING" STATUTE IS CONSTITUTIONAL.

The defendant contends that the new "truth in sentencing" provisions found in 730 ILCS 5/3-6-3(a)(2) (West 1996) are unconstitutional. The defendant contends that the denial of good-time credit against the sentence imposed for murder is unconstitutional because it fails to "permit recognition of differences in rehabilitation possibilities among individual offenders" and precludes the courts from considering the mitigating factors presented. He further contends that this provision is violative of the prohibition of cruel and unusual punishment because it will cause an increase in the prison population resulting in unconstitutional overcrowding. The People maintain that the statute in question is constitutional.

In determining the constitutionality of a statute, the courts must begin with the presumption that the statute is constitutional. The courts have the duty to uphold the statute's validity if reasonably possible and must resolve any doubts in favor of validity. The party challenging the statute has the burden of clearly establishing that the

14

statute is unconstitutional. <u>People v. Lee</u>, 167 Ill.2d 140, 212 Ill.Dec. 231, 656 N.E.2d 1065, 1067 (1995); <u>People v. Jeffries</u>, 164 Ill.2d 104, 207 Ill.Dec. 21, 646 N.E.2d 587, 589 (1995). The defendant has not met this burden here.

The defendant first contends that the truth in sentencing provisions violate his constitutional right to individualized sentencing. The only support he cites for this argument are several federal district court opinions, which are not binding on this court. See, <u>People v. Williams</u>, 161 Ill.2d 1, 204 Ill.Dec. 72, 641 N.E.2d 296, 321 (1994). Moreover, the validity of these decisions is highly questionable since the federal circuit courts which have addressed this issue have generally found that there is no due process right to individualized sentencing. See, <u>U.S. v. Wilkins</u>, 911 F.2d 337, 339-340 (9th Cir. 1990); <u>U.S. v. Jacobs</u>, 877 F.2d 460, 462 (4th Cir. 1989); <u>U.S. v. Franks</u>, 864 F.2d 992, 1009-1010 (3rd Cir. 1988); See also, <u>Lockett v. Ohio</u>, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (plurality opinion) (established practice of individualized sentencing rests not on constitution but on public policy enacted into statute). This court should therefore reject defendant's contention that he has a constitutional right to individualized sentencing.

Moreover, even assuming a right to individualized sentencing, such right has not been violated by the truth in sentencing statute. The length of a defendant's sentence is not determined based on 730 ILCS 5/3-6-3(a)(2)(i) and 3-6-

15

3(a)(2.1) (West 1996).  Instead, the length of the sentence for murder is governed by 720 ILCS 5/9-1(b) and (g) (West 1994) and 730 ILCS 5/5-5-3 and 5/5-8-1(a)(1) (West 1994).  The truth in sentencing provision is not concerned with the length of the sentence which may be imposed on the defendant but instead only determines the terms and conditions for the defendant's release upon completion of the sentence imposed by the court.  The fact that the defendant may have to serve the entire term imposed can in no way limit the court's ability to consider all the relevant aggravating and mitigating factors when determining the appropriate sentence for a particular defendant.  Defendant's due process challenge is thus without merit.

It should here be noted that the validity of disallowing good-time credits for certain defendants has previously been addressed by the court in <u>People v. Gaither</u>, 221 Ill.App.3d 629, 164 Ill.Dec. 172, 582 N.E.2d 735 (5th Dist. 1991). There, the defendant contended that the denial of good-time credit for an individual convicted of misdemeanor battery involving physical harm was unconstitutional since he would have been eligible for credit if convicted of the class 4 felony of cruelty to a child.  The appellate court rejected this contention finding that the denial of good-time credit for crimes involving harm to an individual was reasonably related to the goal of reducing this kind of offense.  582 N.E.2d at 743-744.

16

The same conclusion should be reached here. The legislature has determined that requiring individuals convicted of murder to serve the entire sentence imposed by the courts was necessary to address the problems of violent crime and to protect the public. 730 ILCS 5/3-6-3.1(a) (West 1996). The truth in sentencing provision is reasonably related to addressing the legislature's concerns regarding respect for the law, deterring crimes, and preventing repeat offenses. The statute thus does not violate due process. See, People v. Arna, 168 Ill.2d 107, 212 Ill.Dec. 963, 658 N.E.2d 445, 449 (1995) (legislature given broad discretion to affix punishment and law satisfies due process if reasonably designed to remedy evils found by legislature); Lee, 656 N.E.2d at 1067-1068 (legislature more aware of evils confronting society and law valid if reasonably tailored to remedy evils legislature determines to be a threat).

It should also be noted that mandatory natural life sentences without possibility of parole are constitutional and have been found not to violate the requirement that the defendant's rehabilitative potential be considered. See, People v. Dunigan, 165 Ill.2d 235, 209 Ill.Dec. 53, 650 N.E.2d 1026, 1030-1032 (1995); People v. Taylor, 102 Ill.2d 201, 80 Ill.Dec. 76, 464 N.E.2d 1059, 1062-1063 (1984). If the legislature may impose a mandatory life sentence without possibility of parole, there is no constitutional rule which would preclude the legislature from denying the possibility of

17

parole or supervised release to any defendant convicted of murder.

This court should also reject the defendant's contention that the truth in sentencing statute violates the eighth amendment"s prohibition of cruel and unusual punishment. The defendant's only contention is that this statute will lead to prison overcrowding and to the creation of a dangerous environment. The defendant cites no authority for his claim that this requires invalidation of the sentencing scheme. His claim should thus be deemed waived for failure to comply with the requirements of Supreme Court Rule 341. See, People v. Patterson, 154 Ill.2d 414, 182 Ill.Dec. 592, 610 N.E.2d 16 (1992). Moreover, a constitutional challenge to a statute may not be made based on the ground that it might be unconstitutionally applied in some hypothetical case. People v. Wisslead, 108 Ill.2d 389, 92 Ill.Dec. 226, 484 N.E.2d 1081, 1084 (1985). The defendant's entire argument rests on such a hypothetical and should therefore not be addressed by this court.

Moreover, the defendant's argument proceeds on several unfounded suppositions. First, the defendant assumes that the prison population will inevitably increase as a result of denial of good-time credit to defendants convicted of murder, overlooking the possibility that the statute might have the deterrent effect envisioned by the legislature. The defendant also assumes that the number of prisons and cells will remain

18

constant and that there will not be any further prisons constructed. Under these circumstances, this court need not declare section 3-6-3(a)(2) unconstitutional based on speculation concerning the future prison population.

This court should therefore affirm the defendant's sentence.

19

## CONCLUSION

Wherefore, the PEOPLE OF THE STATE OF ILLINOIS respectfully request this court to affirm the defendant's conviction and sentence and to tax costs accordingly.

Respectfully submitted,

THE PEOPLE OF THE STATE OF ILLINOIS

Patrick W. Kelley
State's Attorney
Sangamon County Complex
Springfield, Illinois  62701

Norbert J. Goetten
Director
Robert J. Biderman
Deputy Director
David E. Mannchen
Staff Attorney
State's Attorneys Appellate
        Prosecutor
725 South Second Street
Springfield, Illinois  62704
(217) 782 - 8076

COUNSEL FOR PLAINTIFF-APPELLEE