E-FILED
Tuesday, 31 October, 2006  04:14:07 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THOMAS RICE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No.  04-3019 |
| ) | |
| GREGORY LAMBERT, ) | |
| ) | |
| Respondent. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Petitioner Thomas Rice's Petition for Writ of Habeas Corpus (d/e 2) (Petition).  Rice seeks relief pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the Petition is DENIED.

## BACKGROUND

In November 1995, Rice was tried in Sangamon County, Illinois, for the first degree murder of John W. Day, Jr.  A mistrial was declared following the jury's inability to reach a unanimous verdict.  In January 1996, Rice was retried.  Larry Granderson, who, in the first trial, had testified as an eye witness to the shooting, failed to appear for the second

1

trial, despite the fact that he was under subpoena.[1] The trial judge determined that Granderson had been properly served with a subpoena and knew his presence was required in court. Exhibit (d/e 25), Transcript of Jury Trial held January 24, 1996, p. 56. The court further determined that the prosecution acted with reasonable due diligence in attempting to secure his presence. Id., p. 57. Therefore, the court, over defense objection, allowed the prosecution to present Granderson's testimony from Rice's first trial. Rice was subsequently convicted of the first degree murder and sentenced to thirty-five years of incarceration.

Rice appealed, arguing that: (1) the trial court erred in allowing Granderson's prior testimony to be read to the jury in Rice's second trial, (2) the verdict was against the manifest weight of the evidence, and (3) the Illinois truth-in-sentencing statute violated Rice's constitutional rights. The Illinois Appellate Court for the Fourth District affirmed Rice's conviction and sentence by order dated February 7, 1997. Rice filed a Petition for Leave to Appeal to the Illinois Supreme Court, raising only the prior testimony issue. The Petition for Leave to Appeal was denied on October

---

[1] A transcript of Larry Granderson's testimony in Rice's first trial is found at Exhibit (d/e 21), Transcript of Jury Trial held November 6-7, 1995, p. 111-155.

1, 1997.

In January 1998, Rice filed a petition for post-judgment relief, alleging that his conviction was based on perjured testimony by Larry Granderson. In April 1998, Rice filed a petition for post-conviction relief in the state court, which he amended in August 1998. Rice alleged that: (1) he received ineffective assistance from trial counsel, (2) he received ineffective assistance from appellate counsel, (3) his conviction was based on perjured testimony, (4) the admission at the second trial of the transcript of Granderson's testimony from the first trial violated the confrontation clause, and (5) he was wrongfully denied good time credit.

The trial court held a hearing on Rice's requests for post-judgment and post-conviction relief. <u>Exhibit (d/e 28), Transcript of Proceedings held July 17, 1998</u>. At the hearing, Granderson testified. The following colloquy took place between Granderson and the trial judge:

> THE COURT: You indicate in your written--your handwritten statement, which is attached to the transcript here, that Ms. Strickland was looking through the panes of glass in the front door at the time of the shooting, and now you testify that she was unable to see anything about a shooting. Doesn't that seem to be inconsistent to you?
> A. That is inconsistent, but let me explain something: When she was in the kitchen, we heard a shot, pow. She's the one run out to the kitchen, went to the door and looked outside,

3

and said, "John is shot." I ran out the kitchen into-- following exactly--followed her motion, went into the living room, looked out the window, and saw John laying on the ground, and that is all I seen.

THE COURT: Okay. But, the question is what she saw? I mean, that is my question to you.

A. Okay.

THE COURT: Because you've testified here that she was incapable of seeing out the door.

A. At the time of the shooting.

THE COURT: At the time of the shooting, but in your written statement, you indicate that she, when you came in, and John was going out the door--let me find that.

\* \* \* \*

THE COURT: Shawnetta was screaming. You then started to the entrance way that led upstairs where Shawnetta was screaming. She asked you to stop John from going outside. You turned back around to go to try to stop him. He had made it through the front door, and then, quote: "I noticed Rosia Strickland standing directly looking out of our window pane in the square glass front door. I then turned around to holler to Shawnetta that John is already outside," and then you heard a shot, okay?

A. Okay.

THE COURT: In this written statement, you've got Ms. Strickland looking out the front door, and today you say she was in the kitchen with you and couldn't see. Now, which is it?

A. She was in the kitchen with me. That's the truth.

THE COURT: Okay. One last point of inquiry: You say today that you're not here because you're afraid of anybody. As a matter of fact, I think, if I quote you directly, you say you're not afraid of anything.

Isn't it a fact that during the course of the first trial, prior to your testimony, you made complaints to Assistant Attorney Vujovich that you had been receiving threats from certain gang members concerning your testimony.

A. That's true.

4

>    THE COURT:   Were you afraid, at that point?
>    A.   It really wasn't happening.
>    THE COURT:   What do you mean it wasn't happening?
>    A.   I wasn't' receiving no threats.
>    THE COURT:   But, you complained to Mr. Vujovich that you were receiving threats.
>    A.   That was just to, you know, to make the case stronger, which was a lie to begin with.
>    THE COURT:   Well, you indicated that you initially told the police a lie, and then repeated that lie on the witness stand out of love and devotion to Ms. Strickland, correct?
>    A.   That's true.
>    THE COURT:   What caused you to try to embellish your lie by making a complaint to the State's Attorney that you were being pressured by members of the street gang?
>    A.   Just to -- like I said, just to make the case stronger.

<u>Transcript of Proceedings held July 17, 1998</u>, pp. 49-52.  The trial court allowed "day for day" good time credit, but denied the remainder of Rice's claims.  Rice appealed.

The Appellate Court consolidated Rice's appeals of the petition for post-judgment relief and the petition for post-conviction relief.  These consolidated appeals were dismissed in August 2001 when defense counsel failed to file an appellate brief.  The dismissal was vacated in April 2002.  The appeals were reinstated and the office of the State Appellate Defender was appointed to represent Rice.

Rice raised one issue in his consolidated appeals, i.e., whether the trial

court abused its discretion in denying Rice's request for a new trial based on the evidence that Granderson had given perjured testimony. By order dated June 11, 2003, the Appellate Court affirmed the trial court orders denying Rice's requests for post-judgment and post-conviction relief. Rice filed a Petition for Leave to Appeal to the Illinois Supreme Court, which was denied on October 7, 2003. Rice then filed the instant Petition, which raises the following claims: (1) the Appellate Court erred in upholding the trial court's decision to allow Granderson's prior testimony to be used at the second trial, and (2) the Circuit Court abused its discretion by denying Rice's request for a new trial based on evidence that Granderson had given perjured testimony at the first trial. As set forth below, Rice's Petition is denied.

## ANALYSIS

A prisoner in state custody seeking federal habeas relief must first give the state a full and fair opportunity to consider his claims either on direct appeal or through state post-conviction relief. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Rice's claims were adjudicated on the merits, and thus, Rice's Petition must meet the requirements of § 2254(d)(1). This Court may issue a writ of habeas corpus to a state official only if the state court

decision denying Rice's claims: (1) was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). If the state court identified the correct rule of law, then this Court will not issue the writ if the state court's application of the law is minimally consistent with the facts and circumstances of the case. Sweeney v. Parke, 113 F.3d 716, 718 (7th Cir. 1997).

The Supreme Court has held that prior trial or preliminary hearing testimony of an unavailable witness is admissible if the defendant had an adequate, prior opportunity to cross-examine the witness, and the responsible prosecutorial authorities demonstrate the unavailability of the witness despite their good-faith efforts to secure the witness' presence. See e.g. Crawford v. Washington, 541 U.S. 36, 59 (2004); Barber v. Page, 390 U.S. 719, 722-725 (1968); Mancusi v. Stubbs, 408 U.S. 204, 213-216 (1972); California v. Green, 399 U.S. 149, 165-168 (1970); Mattox v. United States, 156 U.S. 237 (1895).

The Appellate Court of Illinois Fourth District concluded that Rice's

7

right to confrontation had not been violated. In its order dated February 7, 1997, the Appellate Court first recited the facts of the case as recounted by Granderson during the first trial:

> Granderson testified at the first trial but could not be found to testify at the second, even though he was under subpoena. His testimony from the first trial was read into the record. Granderson had testified that he lived with Rosia and her family. At 5:30 p.m. on August 29, 1995, he was in the back-yard feeding the dog when he noticed a tan Oldsmobile carrying four black males blocking the driveway. He walked up the driveway toward the car and recognized the defendant, whom he had known for two or three years, sitting in the front passenger seat. He greeted the defendant and asked what he wanted. The defendant asked if Day was home, and Randy Raglin, Rosia's 14 year-old son, told him Day was in the house. Granderson went back to the yard to finish feeding the dog and then went into the house. He saw Day come down the stairs and heard Shaunetta screaming for the victim not to go outside. Day went out the front door, leaving it open. Granderson went to the front door, closed it, and stood looking out through the glass pane. He saw Day leaning on the passenger side of the car talking to the defendant. He then saw the defendant stick the gun out the window and shoot Day, who backed up and fell, and the car pull away. Rosia immediately ran past Granderson out the front door to Day. The jury found the defendant guilty, and he was sentenced to 35 years' imprisonment.

Exhibit A (d/e 12), The Illinois Appellate Court Order dated February 7, 1997, pp. 2-3.

The Appellate Court then reasoned that the state authorities had made good-faith efforts to obtain Granderson's presence at trial.

Specifically, the Appellate Court noted:

> The evidence clearly indicates good-faith efforts to secure Granderson's appearance at trial. Following the declaration of mistrial on November 8, 1995, a second trial was set for January 22, 1996. Granderson was subpoenaed for that date and Detective Robert Oney maintained telephone contact with him until the first of the year when it was discovered Granderson no longer resided at the Strickland residence. Detective Oney then contacted the locations Granderson was known to frequent in Springfield, including the home of Granderson's sister. Rosia gave Detective Oney a phone number of a drug and alcohol rehabilitation center in Quincy where Granderson could be contacted. The center would not confirm whether Granderson was a client, but Detective Oney was able to contact Granderson there on January 17 and arranged a meeting at the center for January 18. When Detective Oney arrived, he discovered Granderson had left; he also could not be located in two other areas to which Oney was directed. Oney returned to Springfield, called the center, and spoke to Granderson, who promised to come to Springfield the following day. Oney alerted the police in Springfield and Quincy to be on the lookout for Granderson and attempted unsuccessfully to have a body attachment served at Granderson's last known address in Quincy. He never heard from Granderson after January 18. Oney stated that the State's Attorney's office had supervised and coordinated the search and had itself investigated two locations in Springfield where it was suggested Granderson might be. These efforts are distinguishable from the facts in People v. Payne, 30 Ill. App. 3d 624, 332 N.E.2d 745 (1975), cited by defendant.

Id. at 3-4.

Based on the evidence presented, this Court must conclude that Rice's right to confrontation was not violated when the state trial court allowed

9

the state prosecutors to present Granderson's testimony from the first trial in the second trial. Here, Rice had a prior opportunity (specifically, the first trial) to confront and fully cross-examine Granderson. See Transcript of Jury Trial held November 6-7, 1995, pp. 130-152. Further, the State made good-faith efforts to obtain Granderson's presence at the second trial. Granderson was aware that his presence was required. The evidence in the record shows that Detective Oney contacted various places that Rice was known to frequent but to no avail; he was finally able to contact Granderson on January 17, 1996, at which time he arranged to meet with Granderson on the following day. Granderson did not show up. Oney then sought the cooperation of the Springfield Police Department and the Quincy Police Department. Oney stated that the State's Attorney's office also cooperated in these attempts to locate Granderson by coordinating and supervising the search. The state authorities clearly made good-faith efforts to obtain Granderson's appearance at the second trial. Accordingly, the Appellate Court's decision to uphold the trial court's determination to allow Granderson's prior testimony from the first trial to be presented in the second trial was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

Rice's last ground concerns the trial court's denial of his request for a new trial based on evidence that Granderson had given perjured testimony at the first trial. Because of his pro se status, the Court construes Rice's claim as challenging the Appellate Court's final decision dated June 11, 2003, affirming the trial court's orders denying Rice's requests for post-judgment and post-conviction relief in which he claimed that his conviction was a result of Granderson's perjured testimony. Exhibit B (d/e 12), The Appellate Court's Order dated June 11, 2003.

The Due Process Clause of the Fourteenth Amendment prohibits the State from soliciting perjured testimony in a criminal trial. United States v. Bagley, 473 U.S. 667, 678-80 (1985). A conviction obtained with the knowing use of perjured testimony must be set aside if there is a reasonable likelihood that the false testimony could have affected the jury's verdict. Id. A witness' mere recantation of his or her prior testimony is not enough to show a violation of the Due Process Clause. Hysler v. State of Florida, 315 U.S. 411, 413 (1942). However, if there is evidence establishing that the responsible state authorities "knowingly used false testimony which was extorted from a witness 'by violence and torture', [a petitioner] may claim the protection of the Due Process Clause against a conviction based upon

such testimony." Id.

The Appellate Court found that the trial court did not err in deciding, after hearing, that Granderson's recantation of his prior trial testimony was not credible. The Appellate Court's Order dated June 11, 2003, pp. 3-4. In order to determine the validity of Granderson's recantation of his prior trial testimony, the trial judge held a post-conviction hearing on July 17, 1998, at which time Granderson testified. At the hearing, the trial judge noted inconsistencies in Granderson's account of the events. See Transcript of Proceedings held July 17, 1998, pp. 49-52. The trial judge thus did not find Granderson's recantation of his prior testimony to be credible. In affirming the trial court's decision, the Appellate Court agreed with the trial judge's assessment of Granderson's credibility. The appellate court also considered the evidence in the record and concluded that there was overwhelming evidence against Rice. Referring to its earlier decision issued February 7, 1997, the Appellate Court explained in its order dated June 11, 2003:

> Moreover, this court has already determined that the evidence against defendant was "overwhelming." See People v. Rice, No. 4-96-0297, slip order at 5 (February 7, 1997) (unpublished order under Supreme Court Rule 23). Although Granderson provided the sole "eyewitness" testimony, other

12

individuals identified defendant as the individual seated in the front passenger seat of a stopped vehicle and each observed a gun being withdrawn from the window nearest defendant immediately after the shooting. The trial court did not abuse its discretion in denying defendant's petition for postjudgment relief.

<u>The Appellate Court's Order dated June 11, 2003</u>, p. 4.

In light of the evidence presented, this Court must therefore conclude that Rice's Due Process rights were not violated. Moreover, Rice is not entitled to habeas relief on this ground because the record is devoid of evidence showing that the state authorities knowingly presented perjured testimony for the jury to consider in finding the Defendant guilty in the second trial. Accordingly, the Appellate Court's decision to affirm the trial court's denial of post-judgment relief was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

THEREFORE, the Petition for Writ of Habeas Corpus (d/e 2) is DENIED. All pending motions are denied has moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: October 31, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE